UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                            Plaintiff,

                                                                          DECISION AND ORDER
                                                                          11-CR-6177L

                        v.

TABARI FACEN,

                            Defendant.
_____

      Defendant Tabari Facen was indicted in a four-count indictment with drug trafficking and firearm-related offenses. Count 1 charged the possession of cocaine base with the intent to distribute. Count 2 charged him with using the premises at 303 Lakeview Park, Rochester, New York, to manufacture, distribute and/or use a controlled substance. Count 3 charged him with possession of a firearm in furtherance of one or both of those crimes, and Count 4 charged him with possessing a firearm and ammunition after a previous conviction of a crime punishable by a term of imprisonment exceeding one year.

      Following a jury trial held May 13-16, 2013, Facen was convicted on all four counts.

      At the conclusion of the government's proof, and again at the close of all of the proof, defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. Proc. 29, contending that there was insufficient evidence to convict. (Dkt. #61, #62). The Court reserved on the motions until after the jury's verdict was returned. *See* Fed. R. Crim. Proc. 29(b).

      For the reasons that follow, the defendant's Rule 29 motion is granted in part, and the jury's verdict is partially overturned. The jury's verdict with regard to Count 1 is affirmed but the Special

Verdict as to Count 1 is reversed. The defendant is acquitted on Counts 2 and 3 of the indictment, and the jury's verdict is affirmed with respect to Count 4.

## DISCUSSION

I.        **The Evidence Adduced at Trial**

On September 26, 2011, a search warrant was executed on a two-story residence at 303 Lakeview Park, Rochester, New York. Defendant was found upstairs, lying in bed in the master bedroom, nude or wearing only underwear. No one else was in the residence at the time. Officers found folded United States currency on top of the bed, near the headboard, beneath where defendant had lain, and additional monies were found hidden behind the headboard on the floor, totaling $1,235.00. Also on the floor of the bedroom was an unlocked safe containing personal papers, some of which bore the name of defendant.

On top of a black dresser in plain view was a box of ammunition, plastic baggies, a rubber stamper and a metal grinder. Upon opening the black dresser, officers discovered a digital scale and a plastic fork coated with an unidentified white residue. Next to the dresser on the floor were a scalpel, a manila envelope containing several pieces of mail addressed to the defendant from Yvette Wilson, the primary resident of the house and the usual occupant of the master bedroom, and two plates coated with unidentified white powder, one of which contained a fingerprint later matched to the defendant.

A second, brown dresser was also situated in the bedroom, on top of which was a small plastic baggie ("dime bag") containing a white substance later identified as .126 grams of cocaine. In the back of the master bedroom closet, officers found a woman's purse containing a handgun, and a duffle bag containing various amounts and calibers of ammunition and magazines, situated on the floor.

Several items of clothing were located on the floor in the corner of the master bedroom, including a pair of white shorts of undetermined size and style. A side pocket of the shorts contained a baggie of white powder which was later tested and identified as cocaine.

Downstairs in the kitchen, a digital scale, a package of plastic baggies and a plastic bag of a hard, rock-like substance (later identified as cocaine) were discovered in a closed cupboard over the stove. Inside the adjacent pantry was a microwave oven, containing a beaker of liquid and a large amount of a white, powdery substance later determined to be cocaine. In the living room, officers seized a single piece of mail from a media stand which had been addressed to defendant at the 303 Lakeview Park residence and bore a postmark date of April 25, 2011, approximately five months prior.

The officers who testified admitted that although clothing and mail belonging to various other persons were present throughout the house, they only seized items that bore, or appeared to bear, some relationship with the defendant.

Defendant's former girlfriend, Marilyn Parker, testified for the defense that from May 2011 until his arrest, defendant resided with her at 576 Emerson Street, Rochester, NY, and that his clothing and effects were located there. She stated that on or about September 25, 2011, she and defendant had an argument concerning her suspicion that he was having contact with his prior girlfriend, Wilson. The fight culminated in defendant leaving the house that evening.

Yvette Wilson, defendant's former girlfriend and the primary resident of the home at 303 Lakeview Park, also testified for the defense. She stated that in September 2011, she and four of her adult children, two of whom sell drugs for a living, resided in the house at 303 Lakeview Park. Her boyfriend at the time, Kevin Ross, would spend approximately three nights per week at the house. Wilson testified that she had observed Ross with drugs in the past, and knew that he owned a gun. Ross had a key to the house at 303 Lakeview Park. Defendant did not.

Wilson identified some of the clothes visible in photographs which were taken by the police of the master bedroom, including the shorts from which drugs were seized, as belonging to Ross.

She testified that the paperwork in the master bedroom safe in defendant's name included a car title for a vehicle which he had signed over to her when she purchased the vehicle from him, and that defendant, along with Kevin Ross, had received mail at 303 Lakeview Park with her permission, even though defendant did not live there.

She stated that on the evening before defendant was arrested, defendant called her at work and asked if he could spend the night at her house because he had a fight with Parker. She gave him permission, and called one of her daughters and directed her to admit defendant into the house when he arrived. Wilson further testified that although the purse in which the firearm was found was hers, she had no knowledge of any guns or drugs in her home. On cross examination, Wilson admitted that she had changed the locks on her house a couple of days prior to the execution of the search warrant, and that Ross no longer had access to the house at that time. She also admitted to a prior conviction for theft of public funds.

Hattie Gilbert, Wilson's adult daughter and a resident at 303 Lakeview Park, testified that much of the clothing found on the master bedroom floor, including the shorts that had drugs in the pocket, belonged to Ross, not the defendant. Gilbert testified that Ross was living at 303 Lakeview Park at the time and customarily slept in the master bedroom. She further indicated that although defendant was a frequent guest in the home, he did not often stay there, and had arrived sometime between midnight and 3:00am the morning of the day the search warrant was executed.

## II.     Count 1 of the Indictment

Count 1 charged the defendant with possessing cocaine base, with the intent to distribute. Defendant contends that no rational juror could have found beyond a reasonable doubt that the defendant possessed the cocaine found at 303 Lakeview Park. I agree, with respect to the cocaine that was not situated in plain sight.

Fed. R. Civ. Proc. 29 provides that a district court shall enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Civ. Proc. 29.

However, a court deciding such a motion must "avoid usurping the role of the jury." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). The Court must therefore consider the evidence in the light most favorable to the Government and to draw all permissible inferences in its favor. *See United States v. Aleskerova*, 300 F.3d 286, 292 (2d Cir. 2002). Nonetheless, when the evidence, viewed in favor of the prosecution, at best "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence . . . a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Cassese*, 428 F.3d 92, 103 (2d Cir. 2005) (internal quotations omitted), *citing United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002). In applying these principles to assess the proof adduced at trial, the Court must consider "pieces of evidence . . . not in isolation but in conjunction." *United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997).

The key facts relating to this charge are undisputed. It is clear that one or more persons at 303 Lakeview Drive possessed cocaine, in amounts sufficient to suggest the intent to distribute, as well as multiple items associated with the preparation and packaging of drugs for distribution. Cocaine was found in a pocket of a pair of shorts on the master bedroom floor, on a dresser in the master bedroom, and inside a kitchen cabinet and microwave. A scale, grinder, stamper, beaker, scalpel, plates and small baggies were found in the master bedroom and kitchen.

Defendant correctly points out that neither his proximity to the drugs, nor his presence in a "drug house," are sufficient by themselves to establish constructive possession over the cocaine that was found during the search, and was not in plain view. *See generally United States v. Navedo*, 443 F. Supp. 2d 431, 436 (W.D.N.Y. 2006) (no rational jury could find that defendant knowingly, constructively possessed drugs found hidden in a house, notwithstanding defendant's unquestioned presence in a known drug house replete with evidence of drug trafficking, including surveillance cameras, plastic baggies, other drugs and drug processing accouterments, where the drugs at issue were not in plain sight, no large quantity of cash or drugs was found on the defendant, and defendant was not an owner or occupant of the house).

However, "where a defendant is admitted to a [dwelling] in which large drug quantities are being packaged in plain view and is 'left in complete control over it and its contents . . . a jury could . . . reasonably conclude[] that [the defendant] . . . possessed the [drugs] found in the [dwelling].'" *United States v. Perez-Luna*, 161 Fed. Appx. 33, 35-36 (2d Cir. 2005), *quoting United States v. Gordils*, 982 F.2d 64, 72 (2d Cir. 1992). *See also United States v. Jones*, 531 F.3d 163, 169 (2d Cir. 2008) (where defendant was the only person in the searched apartment, the jury was permitted to find that he "knowingly and intentionally controlled the drugs plainly visible therein"); *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cit. 1992) (where defendant was one of three persons in an apartment that contained "crack packaging stations," large quantities of narcotics and drug paraphernalia sitting in plain view, jury had ample grounds to convict defendant of possession with intent to distribute). Where contraband is plainly visible, defendant may be found to have possessed it, because it is "not mere presence [in a place where drugs are found], but presence under a particular set of circumstances that provide[]s a reasonable jury with ample grounds" to find possession. *Gordils*, 982 F.2d 64 at 71, *quoting Soto*, 959 F. 2d 1181 at 1185.

Here, the evidence presented at trial with respect to defendant's constructive possession of cocaine with the intent to distribute went beyond defendant's mere location at the time the warrant was executed. It is undisputed that defendant was left alone in the house at the time the warrant was executed, lying upon part of a pile of loose currency in a bedroom in which a dime bag of crack cocaine, a grinder, a stamper, small baggies, a scalpel and a plate covered with white reside were all situated in plain view. A plate found alongside the scalpel bore defendant's fingerprints. Such evidence was sufficient for the jury to infer that drug packaging and/or distribution was taking place in or around the master bedroom, that defendant constructively possessed the drugs and distribution paraphernalia that were situated there in plain view, and that he did so with the intent to distribute. As the Second Circuit has stated, the existence of drugs in "plain view," the presence of nearby drug packaging and distribution materials (also in plain view), and the fact that defendant was left alone in the house, present additional circumstances which go beyond "mere proximity," and are sufficient

to support a jury's verdict with respect to possession with intent to distribute. *See Gordils*, 982 F.2d 64 at 72.

However, to the extent that the jury concluded that the defendant possessed the "hidden" drugs found elsewhere, in the shorts on the master bedroom floor and in the cabinet and microwave in the kitchen, I find that there was insufficient evidence to sustain that conclusion. There is no evidence that the defendant, who was sleeping in a bedroom that was not his, did not reside in the house or have regular access to it, and appears to have made no attempt to hide drugs or to flee the premises during the officers' conspicuously announced entry, had any knowledge of those drugs which were not in plain view. There was also no evidence that the shorts in which cocaine was found belonged to the defendant: no evidence was introduced that the shorts would even fit the defendant.

As such, the jury's finding of guilt as to Count 1 is affirmed, but the jury's Special Verdict finding of that the defendant possessed "more than 28 grams" of cocaine is reversed. The amount of drugs which a reasonable juror could have found defendant possessed with the intent to distribute is limited to the "dime bag" that was lying in plain view in the master bedroom, and contained less than one gram of cocaine. The Special Verdict on Count 1 is modified to find, "28 grams or less."

### III.  Count 2 of the Indictment

Count 2 charged the defendant with using or maintaining the premises at 303 Lakeview Park for the purpose of manufacturing, distributing or using a controlled substance.

A conviction for maintaining a premises for the use, manufacture or distribution of drugs does not require that a defendant reside at the location, or that drugs be found there, *United States v. Snow*, 462 F.3d 55, 71 (2d Cir. 2006), but a defendant's mere presence in a place where such activities have occurred, without more, is insufficient to support a conviction.

To "maintain" a place means to exercise "supervisory control" over it. *United States v. Soto-Silva*, 129 F.3d 340, 346 (5${}^{th}$ Cir. 1997). In considering whether an individual maintains supervisory

control over a premises, relevant factors include whether the individual is an owner or resident of the place or merely a casual visitor, and whether the person performs chores, provides furnishings or food, or assumes financial responsibilities relative to the premises. *Id. See also United States v. Sells*, 477 F.3d 1226 (10th Cir. 2007); *United States v. Clavis*, 956 F.2d 1079 (11th Cir. 1992). *United States v. Morgan*, 117 F.3d 849 (5th Cir. 1997).

Here, there was no evidence presented at trial that the defendant exercised any supervisory control over the premises at 303 Lakeview Park. To the contrary, all of the evidence concerning his reason for being in the house on September 26, 2011 indicated that he was there as an impromptu overnight guest and not a regular resident. Although defendant visited the home approximately twice per week, the house was not solely a "drug house" but a fully furnished and occupied residential home, and there is no evidence that the defendant was visiting it in order to use it for the purpose of drug use, manufacture or distribution, rather than for social visits.[1] There is no evidence that the defendant provided furnishings or supplies for the house or its residents, or otherwise assumed responsibility for it. To the contrary, the utilities were in Wilson's name. Defendant resided elsewhere, had no key to the house, and needed to ask permission from Wilson and be admitted by one of the residents of the home in order to gain access.

Based on this evidence, there was insufficient evidence for the jury to conclude that defendant "maintained" 303 Lakeview Park for the purpose of using, manufacturing or distributing drugs, as charged in Count 2. I therefore reverse the jury's verdict of guilty as to that count.

---

[1] Although no testimony was offered at trial concerning the drug sales which provided the foundation for the search warrant, I note that the affidavit which supported the search warrant application detailed drug buys from an African-American male approximately thirty (30) years old, standing 5'9" in height and weighing an estimated 250 pounds. (Dkt. #26-2). Having observed the defendant in court, I observe that the defendant is noticeably thinner than the individual described in that affidavit.

### IV. Count 3 of the Indictment

Count 3 charged the defendant with possessing a firearm in furtherance of the crimes described in Counts 1 and/or 2 – namely, the loaded firearm that was discovered hidden inside Wilson's purse in the master bedroom closet.

As with Count 1, mere proximity to an item is not sufficient to indicate constructive possession. There is no evidence that the defendant saw, handled, used, or had any knowledge of the loaded firearm, which was concealed inside Wilson's purse, behind a closet door, in a bedroom that did not belong to the defendant and was not customarily used by him, in a house where defendant did not reside and to which he had no key. Accordingly, there was insufficient evidence for the jury to find that he possessed the gun, let alone that he did so in furtherance of the crime of possession with intent to distribute. The jury's verdict of guilty as to Count 3 is reversed.

### V. Count 4 of the Indictment

Count 4 charged that the defendant, having been previously convicted of a crime punishable by imprisonment for a term of more than one year, unlawfully possessed the firearm and ammunition seized from 303 Lakeview Park.

As above, I conclude above that there was insufficient evidence to convict defendant of possessing the firearm that was hidden inside Wilson's purse in the master bedroom closet. For the same reasons, I find that there was insufficient evidence for the jury to find that the defendant knowingly possessed, or intended to possess, the ammunition that was secreted inside a duffel bag on the floor of the same closet.

There was, however, an additional box of ammunition located on the master bedroom dresser in plain view. As with the dime bag of cocaine, I find that the conspicuous nature of that ammunition, as well as its close proximity to defendant, is sufficient to support the jury's finding that the defendant constructively possessed it.

I therefore affirm the jury's verdict on Count 4, to the extent that the jury concluded that the defendant possessed the box of ammunition situated in plain sight in the master bedroom.

**CONCLUSION**

For the foregoing reasons, defendant's motion for acquittal is granted in part. Defendant is therefore entitled to a judgment of acquittal as to the jury's verdict finding him guilty on Counts 2 and 3 of the indictment. The jury's Special Verdict on Count 1 is modified to find possession of cocaine with the intent to distribute but in an amount of "28 grams or less," and the verdict is otherwise affirmed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 9, 2013.